**ORIGINAL**   **FILED** 17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APR 2 0 2005

U.S. DISTRICT COURT
FLINT, MICHIGAN

STANLEY J. MAZANY,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

CIVIL NO.: 04-CV-71153-DT

HON. GEORGE CARAM STEEH
MAG. JUDGE WALLACE CAPEL, JR.

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is recommended that the Court grant Defendant's Motion for Summary Judgment and enter judgment for Defendant.

### II. REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff protectively filed for benefits on November 5, 2002, alleging that he has been disabled and unable to work since June 28, 2002, due to a herniated disk at L4-L5, apophyseal joint disease at L2, L3, and L4, as well as stenosis. (TR 42-45, 49). Benefits were denied initially on June 29, 2003. (TR 22-27). A de novo hearing was held on August 8, 2002, before Administrative Law Judge [ALJ] John Ransom. (TR 237-62). In a September 25, 2003 decision, the ALJ denied benefits. (TR 12-19). Accordingly, Plaintiff was found not disabled. The ALJ's decision became the Commissioner's final decision when the

Appeals Council denied review on February 20, 2004. (TR 5-7). The Plaintiff has commenced this action for judicial review.

### A. PLAINTIFF'S TESTIMONY

Plaintiff testified that he was fifty-six at the time of the hearing and his birth date was August 28, 1946. (TR 239). He stated that he spent four years at Western Michigan University where he majored in finance. (TR 240.) He reported that he has been married for almost thirty years and has three children aged twenty-one, eighteen, and twelve. Id.

Plaintiff stated that he worked at Besser Company for the past thirty years as a controller/treasurer and left June 30, 2002. (TR 240-41). He explained that he left because "[t]he pain in [his] legs and [ ] arms and the amount of sleep [he] was getting, [he] just couldn't function properly." (TR 241). He explained that he left there on disability and at the time was making $7,790.00 a month. Id. He stated that he is on long-term disability currently with the condition that he apply for DIB. (TR 241-42). In the event that Plaintiff were to receive DIB, he explained that his employer would deduct that amount from what he is currently receiving. (TR 242).

Plaintiff explained that his herniated disk at L4-L5 was first discovered in 1998. Id. He stated that they have also found arthritis. Id. Plaintiff explained that before he left his job he was having difficulty getting up and down from his chair. (TR 243). He stated that he also had trouble staying in his chair and walking without falling. Id. He stated that he gets charley horses in his legs once a night, usually while he is in bed, and he does not get them during the day. (TR 243-44). He stated that they last fifteen to twenty minutes and he has to walk them off. (TR 244). He stated that it occurs more often in his right leg. Id.

2

He stated that his herniated disk was discovered by Dr. Jones, a neurologist when an MRI was performed. (TR 242). He stated at that time he was told to swim two to three times a week by his physician. (TR 242-43). He stated that the swimming did not help to alleviate the pain, so he went back to his doctor around December or January 2002, and was prescribed six-hundred milligrams of Motrin to take three times a day. (TR 244). After that, Plaintiff was sent to see two different neurosurgeons. (TR 244-45). The first wanted to perform surgery, which lead to the second opinion. (TR 245). The second neurosurgeon, Dr. Jones, performed a myelogram and determined that surgery was not necessary at that particular time. Id. At this point, he stated that he was told to see an arthritis specialist, continue swimming, and go to a pain clinic. Id.

Plaintiff testified that he began going to a pain clinic in September 2002, where he saw Dr. Fuchs. Id. He stated that he was put on Vioxx and received an epidural and two facet joint blocks. (TR 245-46). He stated that he also had one cottle steroid injection. (TR 246). He explained that the injections only helped for a brief period of time and he was in pain again by the time he reached his car to leave the clinic. Id. He stated that he discontinued treatment at the pain clinic in December 2002 for this reason. Id.

Plaintiff stated that he is currently treating with a rheumatologist, Dr. Gail Huley. (TR 246-47). He stated that he has been seeing her since April 2003. (TR 247). He explained that he had gone off his medications prior to getting the injections and went back to Motrin because he disliked the Vioxx and felt that it was bothering his heart and causing drowsiness. Id. He stated that he is currently taking six hundred milligrams of Motrin three times daily and his doctor wants to put him on Voltaren, which is similar to Vioxx and Celebrex. Id. He explained at this point that he was also on Celebrex as prescribed by Dr. Gilhooly, but it was not helping with his pain. (TR 247-48).

Plaintiff testified that his pain is currently at the same level as in both December 2002 and 2001, and has not worsened. (TR 248, 250). He described it as:

> it's hard to get up. But basically, down in the legs. Right through here there's like a pain, that's, you know, until you get moving a little bit it stays there. Also, in the back - - lower back and like in the arms now is where it's at. And plus, the neck at one point in time was - - it sort of restricted the movement on my neck now because of the - - pain that shoots down the neck.

(TR 248-49). His doctor has indicated that she believes this pain is caused by arthritis. (TR 249). He explained that in his hands it is only his "first knuckles" that are in pain. Id. He stated that this problem with his knuckles has been there since December 2001 and it is the same in severity as it was then. Id.

Plaintiff described a typical day. (TR 250). He stated that he gets up at about five in the morning. Id. He stated that he gets out of bed about three to four times a night due to his pain. Id. He explained that he positions himself in a chair or on the couch with pillows to alleviate the pain. Id. He stated that he alternates between sleeping in bed, in a chair, and on the couch equally. (TR 250-51).

During the day, Plaintiff testified that he takes a couple of naps usually one around ten-thirty in the morning and one around two-thirty in the afternoon. (TR 251). He also stated that he cannot walk very far for example, he stated that he walks five hundred feet to his mailbox and he has to sit down. (TR 251, 252). Plaintiff stated that he cannot sit too long, maybe an hour, but he has to reposition himself in order to alleviate his pain. (TR 251). He stated that he sits in a motorized recliner for an hour or two everyday and he may sleep in it during the night as well. (TR 252). He stated that he also spends an hour or two lying on his couch each day, but he does not lie down in his bed during the day. Id.

4

Plaintiff stated that his pain is located in his leg, arm, and neck joints. (TR 253). He stated that his pain would be an eight or nine on a scale of one to ten if he did not take his Motrin. Id. With the Motrin, he stated that his pain is at a four or five. Id. Plaintiff explained that the Vioxx helped with his pain to the same extent, but that he discontinued it after about four months because he felt like it made his heart race. (TR 254). He stated that a test was performed to determine if he had any blockages in his heart, but they came back negative. (TR 254-55). He stated that he was on Celebrex for a while, but that it did not work, thus, his doctor wants to try Voltaren. (TR 255).

Plaintiff testified that he had a right shoulder operation due to a rotator cuff tear in 1998. Id. On June 23 of this year, he had his left shoulder rotator cuff operated on due to a tear and also had some bone removed. (TR 255-56). Plaintiff stated that he can almost wash his hair now and he can put his hand behind his back, although it is weaker. (TR 256). He stated that he hopes this operation will be as successful as the last one. Id.

Plaintiff explained that the main reason he cannot work is lack of ability to concentrate caused by pain and movement. Id. He stated that it is difficult to walk up stairs and when he gets to the top he has increased pain. He has a fear of falling. Id. He also stated that he is tired. (TR 257). He stated that he is able to bathe, groom himself, and get dressed, although his wife helps him with his socks and shoes. Id. He stated that he tries to help with the laundry, dishes, and cooking. Id. He stated that he fishes a little, but he is unable to hunt anymore. Id. He also stated that he helps his twelve year old daughter with the yard work, but is not able to do much. (TR 258). He stated that he is seldom active socially. Id.

Plaintiff testified that he has a valid driver's license and can drive. Id. However, he stated that he does not drive long distances. Id. He explained that he uses cruise control and after about an hour he has to stop driving. Id.

### B.  MEDICAL EVIDENCE

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[1]

### C.  VOCATIONAL EXPERT'S TESTIMONY

Pauline McEachin, a vocational expert [VE], testified at the hearing. (TR 258-61). The ALJ presented a hypothetical question to the VE, assuming Plaintiff's age, education, and work experience and "the limitations and impairments that [Plaintiff] has alleged and that his testimony is credible." (TR 259). The VE stated that such an individual would not be capable of Plaintiff's past work. Id. Further, the VE stated that Plaintiff would not be capable of other light or sedentary work due to the need "to nap or just lie down during the day and he also states that he has a lack of concentration because of the pain." Id.

The ALJ then posed a second hypothetical assuming that Plaintiff "could perform light work, but he required a sit/stand option with no repetitive bending, twisting, turning, no climbing." (TR 260). The VE testified that under those conditions Plaintiff could perform his past work as well as approximately 38,000 skilled manager or administrator positions and 30,000 semiskilled manager and administrator positions. Id. The VE stated that these jobs would be classified as light. (TR 261). Further, the VE stated that 17,000 financial manager positions existed under sedentary. Id.

---

[1] See Subpart E, supra.

The VE stated that any vocational adjustment to the aforementioned positions would be minimal. Id.

### D. ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that

> claimant has an October 1998 right shoulder decompression of the acromion, surgical resection arthroplasty of the acromioclavicular joint and repair of a huge tear of the supraspinatus of the right shoulder; degenerative disorders of the spine, degenerative disc disease of the lumbar spine, facet syndrome, lumbar spondylosis; possible diffuse idiopathic skeletal hypertrophy; arthritis of the cervical, toracic and lumbar spine and a June 2003 left shoulder rotator cuff repair with decompression of the acromion, resection arthroplasty of the acromioclavicular joint and excision of the bursa.

(TR 15-16). However, the ALJ found that he does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulation No. 4. (TR 16, 18). The ALJ found Plaintiff not to be fully credible. Id. Thus, he determined that Plaintiff had the residual functional capacity [RFC] to perform his past relevant work. (TR 17, 18). In addition, the ALJ stated that Plaintiff "is able to perform approximately 86,000 skilled and semi-skilled jobs in the regional economy that require only a minimal vocational adjustment." (TR 17). Therefore, the ALJ concluded that Plaintiff is not eligible for disability. (TR 18-19).

### E. ANALYSIS

Plaintiff advances several claims in his Motion for Summary Judgment. His Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ failed to properly evaluate Plaintiff's credibility; (2) he failed to give proper weight to the VE's testimony;

and (3) he "completely ignored the Doctors' reports."[2] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[3] The matter is now ready for decision.

1. **Standard of Review**

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

---

[2] Plaintiff's Motion for Summary Judgment and Brief filed August 5, 2004 (hereinafter "Plaintiff's Brief"), at pages 7-13.

[3] Defendant's Motion for Summary Judgment and Brief filed October 25, 2004 (hereinafter "Defendant's Brief"), at pages 7-14.

8

### a.   Credibility

Plaintiff alleges that the ALJ erred in assessing his credibility.[4] As Plaintiff points out,[5] in order to determine disability based on subjective complaints and limitations, there must be a two prong analysis.

> [T]he court explained this standard: "In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so then, 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."

McCoy on Behalf of McCoy v. Chater, 81 F.3d 44, 47 (6th Cir. 1995) (quoting Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 117 (6th Cir.1994) (citing Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991) and (quoting Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir. 1986)). Further,

> When determining credibility, in addition to the objective medical evidence, the ALJ must also consider:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

---

[4] Plaintiff's Brief at pages 9-13.

[5] Plaintiff's Brief at page 9, 12.

Ridge v. Barnhart, 232 F.Supp.2d 775, 790-91 (N.D. Ohio 2002). Although "[c]redibility determinations rest with the ALJ,"[6] "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." See Auer v. Sec'y of Health & Human Servs., 830 F.2d 594, 595 (6th Cir.1987); Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). In addition, "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984). Hurst v. Sec'y of Health and Human Servs., 753 F.2d 517, 519 (6th Cir.1985). As Social Security Ruling [SSR] 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D.Mich., Aug. 3, 2004) (slip copy).

The ALJ stated:

> claimant has not had any back surgery and he presently takes only Motrin for pain. Muscle strength remains full on a five-point scale or at least well preserved in the major muscle groups of the upper and lower extremities. The claimant's bilateral shoulder injuries have been treated surgically. The claimant has not participated in any extensive physical therapy, physical rehabilitation or other work hardening program. The level of dysfunction described by the claimant at the hearing is also not indicated to his treating doctors or other medical sources. Specifically, the need to recline or lie down during the course of a typical workday is not reasonably medically attributable to the claimant's impairments.

---

[6] See Siterlet v. Sec'y of Health and Human Servs., 823 F.2d 918, 920 (6th Cir. 1987) (per curiam). Price v. Comm'r of Soc. Sec., 234 F.3d 1269, 2000 WL 1648129, *2 (6th Cir. 2000) (unpublished disposition; Table).

(TR 16). Specifically, Plaintiff alleges that the ALJ's statement regarding Motrin is "misleading."[7] The ALJ was aware that Plaintiff was prescribed other drugs at other times, including Vioxx and Celebrex as stated in his decision. (TR 15). Additionally, Plaintiff specifically testified that he was taking Motrin at the time of the hearing with some relief, bringing his pain from an eight to four or five. (TR 253).

Plaintiff also discusses his daily activities and inability to concentrate.[8] Plaintiff testified that his pain impairs his ability to concentrate. (TR 256). However, as Defendant points out, Plaintiff's wife reported that he read daily, which negates any alleged difficulty concentrating. (TR 78). Further, in December 2002 and at the hearing, Plaintiff reported that he helps with laundry, cooking, dishes, lawn care, and shoveling snow when he is not in pain. (TR 74, 257-58). Further, he stated that he occasionally fishes. (TR 257).

Further, although Plaintiff asserts that his medical records contain enough information to "render him disabled," and he has a level of dysfunction requiring him to lie down or recline frequently,[9] his doctors never stated same in those records.[10] "An administrative decision is not

---

[7] Plaintiff's Brief at page 11.

[8] Plaintiff's Brief at page 12.

[9] Plaintiff's Brief at page 11.

[10] Dr. Field's progress notes did state on May 20, 2002, that Plaintiff's pain "keeps him awake. Feels tired a lot." However, the doctor says nothing about the need to recline or nap during the day. (TR 145). Additionally, a letter by Lynn E. Field, M.D., dated November 21, 2003, states that Plaintiff "does a fair amount of sleeping during the day," but does not state a medical reason for same. (TR 234). Further, although the Appeals Council added this letter to the official record, (TR 8), it is additional evidence that was not part of the record presented before the ALJ. The Sixth Circuit has held that the Court does not have to review new evidence unless good cause has been shown and the new evidence is material. Cline v. Commissioner of Social Sec., 96 F.3d 146, 148 (6th Cir. 1996). In Cline, it was the claimant's
> primary argument [] that because the Appeals Council considered his new psychiatric evidence, the district court was required to do so as well. He is mistaken. (Cont'd....)

subject to reversal merely because substantial evidence would have supported an opposite decision."

Mullen, 800 F.2d at 545 (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir.1984).

> The ALJ may have been wrong, but he was not unclear; after listening to what [Plaintiff] said on the witness stand, observing his demeanor, and evaluating that testimony in the light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [Plaintiff] was trying to make his symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment.

Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). The "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citation omitted). The ALJ's decision was based on substantial, thus, this Court cannot challenge that finding. Williamson v. Sec'y of Health and Human Servs., 796 F.2d 146, 150 (6th Cir. 1986) ("The ALJ expressly found Williamson's testimony not worthy of credit, and such credibility determinations ordinarily are given deference by the court.").

---

(....cont'd) In Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir.1993), this court decided a case very much like Cline's, holding that where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision. The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding. Id. at 696.
Id. Plaintiff has failed to argue good cause or materiality regarding any additional evidence not before the ALJ.

### b.  VE Testimony

Plaintiff alleges that the VE testified that Plaintiff was not able to return to his past employment, contrary to the ALJ's findings.[11] However, as in Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987),

> [t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given those restrictions.

See also, Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 118-19 (6th Cir. 1994). The ALJ determines a plaintiff's restrictions. Here the ALJ found that Plaintiff was not entirely credible. (TR 16, 18). Therefore, the ALJ was not bound by a hypothetical that assumed a level of credibility that the ALJ himself did not assume.

### c.  Doctors' Reports

Plaintiff alleges that the ALJ "completely ignored the Doctors' reports in failing to find evidence of disabling pain. This Court is well aware that the medical opinions and diagnoses of treating physicians are entitled to substantial deference, particularly if those opinions are uncontradicted. King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984).

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

---

[11]Plaintiff's Brief at page 9.

13

Bankston v. Comm'r of Soc. Sec., 127 F.Supp. 2d 820, 824 (E.D. Mich. 2000). However, such deference is due only if the treating physician's opinion is based on sufficient medical data. See 20 C.F.R. § 404.1529. It is often misunderstood that the determination of disability is the prerogative of the Secretary, and not the treating physician. Kirk v. Sec'y Of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981); Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir. 1986); 20 C.F.R. § 404.1527. An ALJ may reject a physician's opinion when it is brief, conclusory, or not supported by medically acceptable clinical or laboratory diagnosis techniques. 20 C.F.R. § 404.1527(d)(2). Accordingly, treating physicians' opinions must be grounded on objective medical evidence, and no deference need be afforded those opinions if they are simply conclusory. Houston v. Sec'y of Health and Human Servs., 736 F.2d 365, 367 (6th Cir. 1984); Duncan, 801 F.2d at 855 (citing King, 742 F.2d at 973). In other words, the weight to be given a doctor's opinion by an ALJ will depend on the extent to which it is supported by "specific and complete clinical findings." Giddings v. Richardson, 480 F.2d 652, 656 (6th Cir. 1973). See also Cutlip v. Sec'y of Health and Human Servs., 25 F.3d 284, 287 (6th Cir. 1994) (citing Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 151 (6th Cir.1990)).

Nonetheless, Plaintiff presents no evidence of specific findings by physicians which were rejected. Plaintiff reiterates the medical diagnosis and the ALJ's findings.[12] However, as Defendant argues,[13] these reports say nothing about the severity of the alleged impairment,[14] as in Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988), the Court stated, "[t]he mere diagnosis of arthritis, of

---

[12] Plaintiff's Brief at pages 10-12.

[13] Defendant's Brief at page 10.

[14] Defendant's Brief at page 12.

14

course, says nothing about the severity of the condition. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir.1988) (diagnosable impairment not necessarily disabling)."

Plaintiff goes on to simply state rhetorical type questions in his brief.[15] "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Therefore, Plaintiff's conclusory allegations in this regard will not be discussed further.

Further, it is important to keep in mind that the Regulations clearly state that, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). Therefore, even if there were such a statement by a treating physician it would not be dispositive of Plaintiff's disability.

## III. <u>CONCLUSION</u>

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

---

[15]Plaintiff's Brief at page 12.

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

Dated: 4-20-05

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

ORIGINAL

FILED

APR 20 2005

U.S. DISTRICT COURT
FLINT, MICHIGAN

## CERTIFICATION OF SERVICE

UNITED STATES OF AMERICA )
) ss   Case No.: 04-CV-71153–DT
EASTERN DISTRICT OF MICHIGAN )

I, the undersigned, hereby certify that I have on the <u>20th</u> day of <u>April 2005</u>, mailed a copy of the "<u>Report and Recommendation</u>," in the foregoing cause, pursuant to Rule 77(Davenport), Fed.R.Civ.P., to the following:

Honorable George Caram Steeh
United States District Judge
231 W. Lafayette, Room 235
Detroit, Michigan 48226

Janet L. Parker
Assistant United States Attorney
101 First Street, Suite 200
Bay City, Michigan 48708

Roger C. Bauer
109 E. Chisholm Street
Gillard Building
Alpena, Michigan 49707

*Marsha Heinonen*
Marsha Heinonen
Deputy Clerk